UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LEONARD NORMAN,<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br><br>Defendant. | Case No. EDCV 09-01747-JEM<br><br>MEMORANDUM OPINION AND ORDER AFFIRMING DECISION OF COMMISSIONER |

**PROCEEDINGS**

On September 21, 2009, Leonard Norman ("Plaintiff" or "Claimant") filed a complaint seeking review of the decision by the Commissioner of Social Security ("Commissioner") denying Plaintiff's application for Supplemental Social Security income ("SSI") benefits. The Commissioner filed an Answer on March 30, 2010. On June 3, 2010, the parties filed a Joint Stipulation ("JS").

Pursuant to 28 U.S.C. § 636(c), both parties consented to proceed before the Magistrate Judge. The matter is now ready for decision. After reviewing the pleadings, transcripts, and administrative record ("AR"), the Court concludes that the Commissioner's decision should be affirmed and the case dismissed with prejudice.

**BACKGROUND**

Plaintiff is a 48 year old male who was determined to have the medically determinable severe impairments of diabetes mellitus type II (insulin dependent), asthma, diabetic neuropathy, coronary artery disease, and arthritis of left acromioclavicular joint (status post arthroscopic surgery). (AR 14.) Plaintiff has not engaged in substantial gainful activity since May 16, 2001, the alleged onset date. (AR 14.)

Plaintiff's claim was denied initially on August 26, 2002, and on reconsideration on July 18, 2005. (AR 12.) She filed a timely request for hearing and a video hearing was held in San Bernardino, California, on March 14, 2007, before Administrative Law Judge ("ALJ") Henry M. Tai, presiding over the hearing from Honolulu, Hawaii. (AR 12.) Claimant appeared and testified. (AR 12.)

The ALJ issued an unfavorable decision on June 25, 2007. (AR 12-21.) The ALJ thoroughly reviewed the medical evidence of record and concluded that Claimant did not have an impairment or combination of impairments that meets or equals any listing. (AR 17.) The ALJ then determined that the Claimant had the residual functional capacity ("RFC")[1] to sit for six hours of an eight hour workday, stand/walk for six hours out of an eight hour workday, and lift and carry 10 pounds frequently and 20 pounds occasionally. (AR 17.) The ALJ did impose certain limitations: Claimant is unable to use his left upper extremity for frequent overhead type of work, and is precluded from working with hazardous machinery and in extreme temperatures or in environments with extreme dust, chemicals or fumes. (AR 17.)

Claimant had no relevant past work. The ALJ, however, concluded at step five of the sequential process that Plaintiff can perform other jobs in the national economy (AR 20-21) and, therefore, is not disabled within the meaning of the Social Security Act. (AR 21.)

The Appeals Council denied review of the ALJ's decision on July 22, 2009. (AR 4-6.)

---

[1] Residual functional capacity is what one "can still do despite [his or her] limitations" and represents an assessment "based on all the relevant evidence." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

**DISPUTED ISSUES**

As reflected in the Joint Stipulation, the disputed issues that Plaintiff is raising as grounds for reversal are as follows:

1. Whether the ALJ properly considered the consultative examiner's opinion.

2. Whether the ALJ made proper credibility findings regarding Plaintiff's pain testimony.

3. Whether the ALJ properly evaluated the type, dosage, effectiveness, and side effects of Plaintiff's medications in accordance with SSR 96-7p.

4. Whether the ALJ properly assessed Plaintiff's residual functional capacity.

5. Whether the ALJ should have obtained the testimony of a vocational expert.

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), this Court reviews the ALJ's decision to determine whether the ALJ's findings are supported by substantial evidence and whether the proper legal standards were applied. DeLorme v. Sullivan, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence means "'more than a mere scintilla' but less than a preponderance." Saelee v. Chater, 94 F.3d 520, 521-22 (9th Cir. 1996) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401 (internal quotations and citations omitted). This Court must review the record as a whole and consider adverse as well as supporting evidence. Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006). Where evidence is susceptible to more than one rational interpretation, the ALJ's decision must be upheld. Morgan v. Comm'r, 169 F.3d 595, 599 (9th Cir. 1999). "However, a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" Robbins, 466 F.3d at 882 (quoting Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989)); see also Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007).

**SEQUENTIAL EVALUATION**

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or . . . can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Commissioner has established a five-step sequential process to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920.

The first step is to determine whether the claimant is presently engaging in substantially gainful activity. Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007). If the claimant is engaging in substantially gainful activity, disability benefits will be denied. Bowen v. Yuckert, 482 U.S. 137, 140 (1987). Second, the ALJ must determine whether the claimant has a severe impairment or combination of impairments. Parra, 481 F.3d at 746. Third, the ALJ must determine whether the impairment is listed, or equivalent to an impairment listed, in Appendix I of the regulations. Id. If the impediment meets or equals one of the listed impairments, the claimant is presumptively disabled. Bowen, 482 U.S. at 141. Fourth, the ALJ must determine whether the impairment prevents the claimant from doing past relevant work. Pinto v. Massanari, 249 F.3d 840, 844-45 (9th Cir. 2001). Before making the step four determination, the ALJ first must determine the claimant's RFC. 20 C.F.R. § 416.920(e). The RFC must consider all of the claimant's impairments, including those that are not severe. 20 C.F.R. §§ 416.920(e), 416.945(a)(2); Social Security Ruling ("SSR") 96-8p. If the claimant cannot perform his or her past relevant work, the ALJ proceeds to the fifth step and must determine whether the impairment prevents the claimant from performing any other substantial gainful activity. Moore v. Apfel, 216 F.3d 864, 869 (9th Cir. 2000).

The claimant bears the burden of proving steps one through four, consistent with the general rule that at all times the burden is on the claimant to establish his or her entitlement to benefits. Parra, 481 F.3d at 746. Once this prima facie case is established by the

claimant, the burden shifts to the Commissioner to show that the claimant may perform other gainful activity. Lounsburry v. Barnhart, 468 F.3d 1111, 1114 (9th Cir. 2006). If the Commissioner cannot meet this burden, then the claimant is disabled and entitled to benefits. Id.

**DISCUSSION**

**A.  The ALJ Properly Considered The Consulting Examiner's Opinion**

Claimant complains that the ALJ decision did not mention or discuss the opinion of consulting examiner Dr. Kenneth Boddie that there should be "no overhead use of the left arm." (AR 256.) Claimant contends that this opinion conflicts with the ALJ's RFC, which provides that Claimant is "unable to use his left upper extremity for frequent overhead type of work" (AR 17). This means he can perform overhead activities so long as they are not frequent. To reject the opinion of an examining doctor when it is contradicted by another doctor, the ALJ must provide "specific and legitimate reasons" supported by substantial evidence in the record. Lester v. Chater, 81 F.3d 821, 830-31, 834 (9th Cir. 1995).

The ALJ is not required to discuss every piece of evidence in the record, particularly evidence that is neither significant nor probative. Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2003). In this case, Dr. Boddie's evaluation occurred on July 12, 2002. (AR 250-56.) Subsequently, Claimant underwent surgery on his left shoulder in November 2003. (AR 164-66.) After his surgery, Claimant was seen by Dr. Conception Enriquez who opined that Plaintiff was capable of occasional left extremity overhead reaching. (AR 254, 262, 264.) This opinion evidence is set forth in the ALJ decision. (AR 16.) An examining physician's opinion based on his or her own independent examination of the claimant constitutes substantial evidence. Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001). There was nothing inappropriate about relying on the opinion of a more recent examination following corrective surgery. The ALJ's decision to disregard Dr. Boddie's opinion was based on specific and legitimate reasons supported by substantial evidence.

There was no error in disregarding Dr. Boddie's outdated opinion which, given Claimant's improvement after surgery, was no longer significant or probative.

### B. The ALJ Made Proper Credibility Findings

Claimant next challenges the ALJ's rejection of Claimant's credibility regarding his subjective pain symptoms. The ALJ found that Plaintiff's pain symptoms are inconsistent with his activities of daily living and unsupported by the medical evidence of record. The ALJ's decision is supported by substantial evidence.

The test for deciding whether to accept a claimant's subjective symptom testimony turns on whether the claimant produces objective medical evidence of an impairment that reasonably could be expected to produce the pain or other symptoms alleged. Bunnell v. Sullivan, 947 F.2d 341, 346 (9th Cir. 1991); Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998); Smolen v. Chater, 80 F.3d 1273, 1281-82 esp. n. 2 (9th Cir. 1995); Cotton v. Bowen, 799 F.2d 1403, 1407 (9th Cir. 1986). Once the claimant produces objective medical evidence of an underlying impairment, the ALJ may not discredit a claimant's testimony on the severity of symptoms merely because they are unsupported by objective medical evidence. Reddick, 157 F.3d at 722; Bunnell, 947 F.2d at 343, 345. If the ALJ finds the claimant's subjective symptom testimony not credible, the ALJ must make specific findings that support this conclusion. Bunnell, 947 F.2d at 345. The ALJ must set forth "findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." Thomas v. Barnhart, 278 F.3d 949, 958 (9th Cir. 2002); Rollins v. Massanari, 261 F.3d 853, 856-57 (9th Cir. 2001); Bunnell, 947 F.2d at 345. Unless there is evidence of malingering, the ALJ can reject the claimant's testimony about the severity of a claimant's symptoms only by offering "specific, clear and convincing reasons for doing so." Reddick, 157 F.3d 722; Smolen, 80 F.3d at 1283-84. The ALJ must identify what testimony is not credible and what evidence discredits the testimony. Reddick, 157 F.3d at 722; Smolen, 80 F.3d at 1284.

In evaluating a claimant's credibility, the ALJ may consider the nature of the symptoms alleged, including aggravating factors, medication, treatment, and functional

restrictions. See Bunnell, 947 F.2d at 345-47. The ALJ also may consider numerous additional factors, including the claimant's prior inconsistent statements or other inconsistent testimony and physician and third-party testimony about the nature, severity, and effect of the claimant's symptoms. See Smolen, 80 F.3d at 1284 (citations omitted); see also Thomas v. Barnhart, 278 F.3d at 958-59 (in assessing claimant's credibility, ALJ can consider prior conflicting statements concerning drug and/or alcohol abuse). If the claimant testifies as to symptoms greater than normally would be produced by a given impairment, the ALJ may disbelieve that testimony provided specific findings are made. See Carmickle v. Commissioner, Social Security, 533 F.3d 1155, 1161 (9th Cir. 2008) (citing Swenson v. Sullivan, 876 F.2d 683, 687 (9th Cir. 1989)).

Here, the ALJ found that Claimant's medically determinable impairments reasonably could be expected to produce his alleged pain symptoms but found Claimant's statements about the intensity of those symptoms "not entirely credible." (AR 18.) The Commissioner does not contend that there is evidence of malingering. He contends that the ALJ presented specific, clear and convincing reasons for rejecting Plaintiff's credibility as to his alleged pain symptoms.

First, the ALJ noted that Claimant's activities of daily living were inconsistent with his alleged level of disability:

> At the hearing, the claimant testified he has feet pain most of the day and has to sit. However, he also testified that he is [*sic*] does laundry, cooks and otherwise helps around the house. He stated he can drive a car. He testified he is able to go grocery shopping. He stated he could lift less than five pounds. He stated his pain is constant and interferes with his concentration. However, he also testified he watches television throughout the day and reads for one hour. In a consultative examination on September 13, 2004, the claimant stated he does not need help with shopping, dressing, bathing, making meals, doing

> household chores, or walking about on his own. He stated he is able to
> drive and use public transportation.

(AR 18, 189.) Claimant does not even address these specific findings.

Second, the ALJ found that Claimant's descriptions of his limitations are unsupported by medical evidence. This was a valid factor to consider. Rollins, 261 F.3d at 857 ("While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of Claimant's pain and its disabling effects").

The ALJ throughly reviewed the medical evidence, noting that Plaintiff's examinations were normal. (AR 18-19.) The ALJ gave significant weight to the opinions of consulting examiners Dr. Boddie, Dr. Asuncion and Dr. Enriquez, all of which were supported by clinical assessments and laboratory findings. (AR 19.) Most telling, the ALJ noted that each of these examiners arrived at substantially similar RFCs and that no treating physician had opined that Plaintiff is disabled. (AR 19-20.) Thus, the ALJ found Claimant capable of light duty work. (AR 20.)

Again, Claimant does not address the specific findings of the ALJ. The ALJ properly rejected Claimant's pain symptoms as disabling based on specific, clear and convincing reasons supported by substantial evidence.

### C. The ALJ Did Not Err In Failing To Assess Medication Side Effects

Plaintiff argues that the ALJ failed to consider the side effects of Plaintiff's pain medications. Specifically, Plaintiff takes Norco for shoulder pain, which causes drowsiness. This argument fails because Plaintiff never alleged that the side effects of his medication are disabling and there is no medical evidence that they are or would result in greater limitations than those assessed in Claimant's RFC.

An ALJ should consider all factors that might have a significant impact on an individual's ability to work, including side effects of medications. SSR 96-7p; Erickson v. Shalala, 9 F.3d 813, 817-18 (9th Cir. 1993) (citing Varney v. Secretary of HHS, 846 F.2d

581, 585 (9th Cir. 1987) (superseded by statute on other grounds, see Bunnell, 912 F.2d at 1153). Under Varney, an ALJ may not reject a claimant's testimony about the subjective limitations of medication side effects without making specific findings similar to those required for excess pain testimony. Varney, 846 F.2d at 585. Varney is a case in which the claimant testified that her medications caused fairly severe side effects. Id.

Numerous cases, however, have held that an ALJ need not address medication side effects where there is but passing mention of them, there is no allegation that they interfere with the ability to work beyond the limitations assessed in the RFC or there is no medical evidence of side effects severe enough to interfere with the ability to work. Osenbrock v. Apfel, 240 F.3d 1157, 1164 (9th Cir. 2001) ("There were passing mentions of the side effects of Mr. Osenbrock's medication in some of the medical records, but there was no evidence of side effects severe enough to interfere with Osenbrock's ability to work"); Gallegos v. Astrue, 2010 WL 330242, *2-*3 (C.D. Cal. 2010) (complaints of medication side effects may be ignored if unsupported by objective medical evidence, particularly where credibility has been rejected); Maguire v. Astrue, 2008 WL 4793668 *2 (C.D. Cal. 2008) (no error in not addressing side effects where claimant did not allege that side effects interfered with his ability to work and there is no indication in medical records that they did); Mitchell v. Astrue, 2008 WL 4793678 *4-*5 (C.D. Cal. 2008) (failure to discuss side effects not error where unsupported by objective findings). In Smith v. Astrue, 2009 WL 2973108 *4 (C.D. Cal. 2009) (no error where no claim of inability to work because of side effects), the Court ruled that a claimant must present specific information about side effects to the ALJ as part of his or her burden to demonstrate disability.

> If Plaintiff's medications prevent her from working she has to say so. Only at that time does the type, dosage, effectiveness and side effects become relevant, so the ALJ can evaluate Plaintiff's credibility . . . Absent an individual's statements of impairment at the outset, the ALJ has no duty to inquire of the claimant's medications.

Id. Osenbrock, Maguire and Mitchell were all cases holding that drowsiness from medications was not significant enough to interfere with the ability to work.

Here, there were passing references to medication side effects but no claim that those side effects prevented Claimant from working and no medical evidence that medication side effects resulted in any limitations beyond those assessed in Claimant's RFC. In his Disability Report, Claimant alleged shoulder, knee and back pain, diabetes, and fractured ribs. (AR 77, 79.) He also alleged that Norco and insulin make him sleepy (AR 80, 110) but never asserted that he was unable to work because of medication side effects. There is no evidence that Claimant ever complained to any physicians about medication side effects. Nor is there any objective medical evidence that would support Plaintiff's allegations. The treating and examining physicians were aware of Plaintiff's medications yet none opined that Plaintiff was unable to work or was disabled, or that limitations due to medication side effects should result in a more restrictive RFC than that assessed. At the hearing, when asked about side effects, Claimant stated that Norco "makes me sleep" (AR 599) but he did not assert that the Norco side effects rendered him unable to work. Claimant's counsel did not tender that argument to the ALJ or to the Appeals Council. It was first presented to this Court in the Joint Stipulation.

Just as with excess pain testimony, an allegation must be grounded in the medical evidence of record. Here, the record is devoid of any clinical support for limitations due to medication side effects. Plaintiff has never even alleged that medication side effects make it impossible for him to work. The ALJ's convincing rejection of Plaintiff's credibility also must be considered here.

There was no error in not addressing Plaintiff's medication side effects.

**D. The ALJ Properly Assessed Plaintiff's RFC**

Claimant challenges the ALJ's RFC assessment because it does not incorporate Dr. Boddie's limitation that Claimant is precluded from overhead use of the left arm. (AR 256.) This is the same argument presented in Issue No. 1 and it fails for the same reasons previously noted. Subsequent to Dr. Boddie's evaluation, Claimant underwent surgery on

his left shoulder. (AR 164-166.) Dr. Enriquez noted improvement and opined that Plaintiff could use his left upper extremity for occasional overhead reaching. (AR 16, 264.)

Claimant also makes a vague argument that the ALJ's RFC assessment does not contain a proper discussion of Plaintiff's pain symptoms. Yet the ALJ properly discredited Plaintiff's pain testimony and the various physicians, fully aware of Claimant's pain allegations, assessed Plaintiff with RFCs that do not preclude him from work.

The ALJ's RFC assessment is supported by substantial evidence and free of legal error.

### E. The ALJ Was Not Required To Consult A Vocational Expert

Claimant challenges the ALJ's step five determination because the ALJ did not consult a vocational expert. This contention has no merit. The ALJ was not required to consult a vocational expert.

The Claimant had no past relevant work. (AR 20.) The ALJ at step five of the sequential process, however, found that there were jobs that exist in substantial numbers in the national economy that Claimant can perform. (AR 20.) These include route aid, silver wrapper, surveillance monitor, ticket seller, addressee and information clerk. (AR 20.) Most of these jobs are unskilled light or sedentary work. (AR 20.)

The ALJ then observed that, if Claimant had the RFC to perform the full range of light work, a finding of "not disabled" would be directed by the Medical Vocational Guidelines (the "Grids"). The ALJ determined that the nonexertional limitations in Claimant's RFC have "little or no effect on the occupational base of unskilled light or sedentary work." (AR 20.) In particular, the ALJ found that the specific jobs listed above "do not involve operation of hazardous machinery and do not present the worker with exposure to excessive heat, dusts, and gases." (AR 21.) These nonexertional limitations were specified in Claimant's RFC. (AR 17.) Consequently, the ALJ determined that Plaintiff is not disabled within the meaning of the Social Security Act. (AR 21.)

Claimant alleges that, because he suffers from nonexertional limitations, the Grids are not dispositive and the ALJ must consult a vocational expert, citing Tackett v. Apfel, 180 F.3d 1094, 1102 (9th Cir. 1999.) Claimant, however, fails to present a complete presentation of governing law. Tackett, id. at 1101-1102, specifically reaffirmed the following holding of Desrosiers v. Secretary of Health and Human Servs., 846 F.2d 573, 577 (9th Cir. 1988):

> However, the fact that a non-exertional limitation is alleged does not automatically preclude application of the grids. The ALJ should first determine if a claimant's non-exertional limitations significantly limit the range of work permitted by his exertional limitations.

Id. Tackett held that the ALJ erred in that case by not consulting a vocational expert because the claimant suffered from significant nonexertional limitations. Tackett, 180 F.3d at 1103.

The Desrosiers holding continues to have vitality in this Circuit. See Landa v. Astrue, 283 Fed. Appx. 556, 558 (9th Cir. 2008) (claimant's depression not a sufficiently severe nonexertional limitation to require use of vocational expert); Hoopai v. Astrue, 499 F.3d 1071, 1076 (9th Cir. 2007) (same): Macri v. Chater, 93 F.3d 540, 545 (9th Cir. 1996) (mood disorder not a significant nonexertional impairment); Ruiz v. Astrue, 2010 WL 3766335, *4-*5 (C.D. Cal. 2010) (nonexertional limitations had only minimal effect on occupational base). See also Lounsburry v. Barnhart, 468 F.3d at 1115 n. 2.

In this case, the ALJ determined at step two that Claimant did not have any severe nonexertional impairments. (AR 14.) At step four in his RFC, the ALJ did specify nonexertional limitations, i.e., that Claimant is "precluded from working with hazardous machinery and in extreme temperatures or in environments with extreme dust, chemicals, or fumes." (AR 17.) The ALJ, however, specifically found that these nonexertional limitations had no effect on the occupational base of unskilled light or sedentary work (AR 20) and that none of the jobs specified involved operation of hazardous machinery and exposure to excessive heat, dust or gases. (AR 21.) Thus, under Desrosiers, the ALJ was not required

to consult a vocational expert. The nonexertional limitations in the RFC were not significant enough to require the testimony of a vocational expert.

Claimant, however, asserts other nonexertional limitations - pain and side effects of medications. The ALJ, however, properly discredited Claimant's pain testimony and numerous physicians specified an RFC that permitted work. The ALJ also properly disregarded Claimant's allegations of medication side effects as not supported by any medical evidence.

The ALJ did not err in not consulting a vocational expert in his step five determination that there are jobs in the national economy that Claimant can perform. The ALJ's step five determination is supported by substantial evidence and free of legal error.

## ORDER

IT IS HEREBY ORDERED that Judgment be entered affirming the decision of the Commissioner of Social Security and dismissing the case with prejudice.

LET JUDGMENT BE ENTERED ACCORDINGLY.


DATED: November 23, 2010             /s/ John E. McDermott
                                    JOHN E. MCDERMOTT
                                    UNITED STATES MAGISTRATE JUDGE